UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ARANTZA CASTRO,                                             CASE NO.

     Plaintiff,

vs.

ASSOULINE PUBLISHING, INC., a Foreign Profit
Corporation D/B/A ASSOULINE

     Defendant.

_____/

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
UNDER TITLE III OF THE AMERICANS WITH DISABILITIES ACT
AND SUPPLEMENTAL JURISDICTIONAL ALLEGATIONS
ESTABLISHING ARTICLE III STANDING**

Plaintiff, ARANTZA CASTRO, through undersigned counsel, sues Defendant, ASSOULINE PUBLISHING, INC., a foreign profit corporation d/b/a ASSOULINE (hereinafter referred to as "ASSOULINE"), for declaratory and injunctive relief, and damages, and alleges as follows:

This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

1) This action is also brought pursuant to 28 C.F.R. Part 36.

2) This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

3) Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

4) Plaintiff is sui juris, and she is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

1

5)      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase a candle.

7)      Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

8)      The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

9)      The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

10)     Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

11)     Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

12)     At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision whereby her vision fluctuates from 20/250 to 20/800.

13)     Plaintiff's visual impairment interferes with her day-to-day activities and causes limitations in visualizing her environment.  As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

14)     In addition, Plaintiff is an advocate of the rights of similarly situated disabled persons. As such is a "tester" for the purposes of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated

2

websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

15)     Plaintiff is limited in the performance of major life activities due to her visual disability and she requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with her use of a computer.

16)     Plaintiff uses the computer regularly, but due to her visual disability, Plaintiff cannot use her computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. In order to assist her, Plaintiff uses NVDA screen reader software that is readily available commercially. As background, screen reader software translates the visual internet into an auditory equivalent.  The software reads the content of a webpage to the user at a rapid pace.

17)     "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard." *Andrews v. Blick Art Materials, LLC, 17-CV-767, 2017 WL 6542466, at \*6-7 (E.D.N.Y. Dec. 21, 2017)*.

18)     Plaintiff frequently accesses the internet. Because she is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

19)     Defendant, ASSOULINE, is a foreign profit corporation authorized to do business and doing business in the State of Florida.

20)     Defendant, ASSOULINE, is a company that sells books, objects, candles, diffusers, and gifts. There is a retail location in Miami-Dade County.

21)     At all times material hereto, Defendant was and still is a private entity which owns and operates retail locations under the brand name "ASSOULINE".  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, restaurant, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

22)     Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(B), and its implementing regulations, 28 C.F.R. Part 36.

23)     At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://www.assouline.com/. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, the Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA. The website also services Defendant's physical stores by providing information on its brand and

other information that Defendant is interested in communicating to its customers about its physical locations.

24) Since the website allows the public the ability to view the products available at Defendant's locations, purchase products, through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). By this nexus between Defendant's retail store locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA.  The Website must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodations subject to the requirements of the ADA.

### ARTICLE III STANDING: ALLEGATIONS ESTABLISHING CONCRETE AND PARTICULARIZED INJURY IN FACT AND REAL AND IMMEDIATE THREAT OF FUTURE HARM

25) Plaintiff sought to, and did, access Defendant's website in order to obtain information necessary to purchase products and services from Defendant's South Florida location. Specifically, Plaintiff attempted to review current menu offerings, product pricing, store hours, promotional items, service availability, and ordering options so that she could arrange the purchase of a candle or other product or service from that physical location through delivery, pickup, or assisted transportation.

26)     Plaintiff is legally blind and relies on screen-reader software to navigate websites. Plaintiff does not independently travel to retail establishments without assistance and therefore depends on accessible online information to determine whether, when, and how to obtain goods and services from Defendant's physical location.

27)     On or about January, 2026, Plaintiff attempted on multiple occasions to access and use Defendant's website using his screen-reader software. During those attempts, Plaintiff encountered specific access barriers, including but not limited to unlabeled graphics, inaccessible drop-down menus, improperly formatted navigation elements, empty links, and content that could not be interpreted by the screen-reader software.

28)     As a direct result of these barriers, Plaintiff was unable to effectively determine store hours, confirm product availability and pricing, review current promotions, purchase items, or arrange the purchase of services, or otherwise complete or meaningfully prepare for a transaction with Defendant's South Florida location.

29)     Plaintiff resides within the geographic market area served by Defendant's South Florida location and regularly purchases similar products and services from comparable establishments within South Florida.

30)     Plaintiff has concrete plans within the next thirty (30) days to attempt to complete a transaction at Defendant's South Florida physical location including coordinating delivery, pickup, or assisted transportation for the purchase products and/or services at the physical location or store. Plaintiff intends to return to the website and physical location within the next thirty (30) days.

31)     Plaintiff cannot meaningfully arrange or complete such a transaction unless Defendant's website is made accessible so that she may independently obtain necessary information and utilize available purchasing features.

32)     Plaintiff intends to return to Defendant's website in the next thirty (30) days to determine whether the accessibility barriers have been remedied and to complete the intended transaction once the website is accessible.

33)     As a result of the foregoing, Plaintiff has suffered a concrete and particularized past injury and faces a real and immediate threat of repeated future injury that is fairly traceable to Defendant's failure to provide an accessible website and redressable by injunctive relief under the Americans with Disabilities Act.

34)     Plaintiff attempted on a number of occasions in January, 2026 to utilize the Website to browse through the merchandise and online offers, to educate herself as to the merchandise, sales, discounts, and promotions being offered, learn about the brick-and-mortar location, check store hours, and check product pricing with the intent to make a purchase through the Website or in one of the physical locations in the next thirty (30) days. Plaintiff also attempted to access and utilize the Website in January, 2026 in her capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as herself who use screen reader software to access and navigate company websites.

35)     Plaintiff utilized NVDA ("Screen Reader Software") that allows individuals who are blind or visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. Plaintiff attempted to purchase a product or service on Defendant's website in January, 2026.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

**ADA BARRIERS ALLEGATIONS**

36) Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

Assouline: https://www.assouline.com/

System settings while doing the review:

Operating system: Windows 11

Browser: Google Chrome v. 144.0.7559.60

Screen Reader: NVDA v. 2025.3.2.53588

Video Recorder: Monosnap  V. 5.1.18

Summary of Barriers (12)

Wishlist action not announced

On the Product page, adding or removing an item from the wishlist is reflected visually but is not announced by the screen reader, leaving blind users unaware of whether the action succeeded.

Add-to-cart confirmation not announced

On the Product page, adding an item to the cart provides visual feedback only, with no screen reader announcement confirming that the product was successfully added.

Cart item removal not announced

On the Cart page, removing an item updates the cart visually but is not announced by the screen reader, preventing users from confirming that the item was removed.

Cart quantity update not announced

On the Cart page, increasing or decreasing item quantity is shown visually but is not announced by the screen reader, leaving users unsure of the current cart state.

Gift message keyboard inoperable

On the Cart page, the "Gift message" button does not function when activated using the keyboard, preventing keyboard-only users from adding a gift note.

Corporate gifting success message not announced

On the Corporate Gifting page, successful form submission is indicated visually, but the confirmation message is not announced by the screen reader.

Filter state changes not announced

On the Products page, applying or clearing filters is reflected visually, but changes are not announced by the screen reader, leaving users unaware of the active filter state.

Gift wrap selection not announced

On the Product page, adding or removing gift wrap is shown visually but is not announced by the screen reader, preventing users from confirming their selection.

Gift card recipient removal not announced

On the Gift Cards Cart page, removing a recipient updates the page visually but is not announced by the screen reader, leaving users unsure of the outcome.

Incorrect PDF accessibility announcement

On the Swans Bar page, activating the "View the menu" link opens the PDF successfully, but the screen reader incorrectly announces the document as inaccessible, creating confusion for blind users.

Back-in-stock success not announced

On the Product page, after submitting a valid email in the "Email me when available" flow, the success message is displayed visually but is not announced by the screen reader.

Back-in-stock error not announced

On the Product page, when an invalid email is entered in the "Email me when available" flow, error messages are displayed visually but are not announced by the screen reader, preventing users from understanding or correcting the issue.

Overall User Impact

Because critical actions and system feedback across the site are communicated visually but not announced to assistive technologies, blind users who rely on screen readers cannot reliably determine whether their actions have succeeded, failed, or changed the state of the page. Core interactions such as adding items to the cart or wishlist, adjusting quantities, applying filters, selecting gift options, submitting forms, and completing corporate gifting or back-in-stock requests provide no audible confirmation or error feedback. As a result, users are forced into guesswork and repeated attempts, with no reliable way to confirm outcomes. In at least one instance, keyboard operation is also blocked entirely, preventing completion of a required task. Collectively, these barriers prevent blind users from independently completing purchases and managing shopping workflows that are otherwise fully available to sighted users.

Violation 1: 2.1.1 Keyboard

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

On the Cart page, when a user activates the "gift message" button using the keyboard, no action is performed. However, when the same control is activated using a mouse, the

'Add a Gift Note' dialog opens successfully. As a result, keyboard-only users and users relying on assistive technologies are unable to add a gift message, creating a functional barrier and preventing them from completing the intended action independently.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://www.assouline.com/cart

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQCImoMC7Cx3SqVYD2YzD-J8AVyeFViK07a8diXhhq7iSB8

Violation 2: 3.3.1 Error Identification

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

On the Product page, when a user activates the 'Email me when available' button after entering an invalid email for an unavailable product, an error message "An error occurred while subscribing" appear visually. As a result, users relying on assistive technologies are unaware that error has occurred or which field require valid input. This prevents visually impaired users from correcting mistakes and completing the form independently.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://www.assouline.com/products/ultimate-tower-black

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQB6fihrf8QATIIUW1VTxwVwAapN-2hawSFAI9i2W9_2O28

Violation 3: 4.1.2 Name, Role, Value

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

On the Swans bar page, when user activates 'view the menu' link, the PDF opens successfully in a new tab; however, instead of announcing "view menu, opened in new tab", the screen reader incorrectly announces: "This PDF is inaccessible. No text extracted " This incorrect announcement can confuse users relying on assistive technologies, as they may assume that the PDF did not open or is inaccessible, even though it is displayed properly. This creates uncertainty and disrupts the user experience for visually impaired users.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://www.assouline.com/pages/swans-bar

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQClSdc1MiuMSYc8Kr5RtvzvARD15TuwHNSsIMx4TFfCSlU

Violation 4: 4.1.3 Status Messages

In content implemented using markup languages, status messages can be programmatically determined through role or properties such that they can be presented to the user by assistive technologies without receiving focus.

On the Cart page, when a user removes an item from cart, the screen reader does not announce that the item has been removed. Sighted users see the item disappear immediately, but users relying on assistive technology may not know whether their action succeeded. Announcing the removal (e.g., "item removed, 2 items remaining") ensures that all users understand the update and can complete their order.

Applicable WCAG 2.1 Standard at Issue: 4.1.3 Status Messages (Level AA)

URL Where Issue Was Encountered:

https://www.assouline.com/cart

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQDE9q_D_vCBSor0esSTckYHAUqLVzKtdd C_b9QWDGhkC5c

Violation 5: 4.1.3 Status Messages

In content implemented using markup languages, status messages can be programmatically determined through role or properties such that they can be presented to the user by assistive technologies without receiving focus.

On the Cart page, the screen reader does not announce the updated product quantity after users increase or decrease it. While sighted users can see the quantity change visually, assistive technology users receive no clear feedback about the update. This creates

confusion, as users may not know whether their action was successful or how many items are currently selected. Announcing the updated quantity ensures that all users, including those relying on screen readers, can review and adjust their orders accurately.

Applicable WCAG 2.1 Standard at Issue: 4.1.3 Status Messages (Level AA)

URL Where Issue Was Encountered:

https://www.assouline.com/cart

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQAiwXI_S5XiQLzh6FrmoHiBAfhMPEE1VF EDz19rfsD6d3I

Violation 6: 4.1.3 Status Messages

In content implemented using markup languages, status messages can be programmatically determined through role or properties such that they can be presented to the user by assistive technologies without receiving focus.

On the Corporate gifting page, when the form is successfully submitted, the screen reader does not announce the success message "Thank you for contacting us." which is displayed visually. This causes confusion for users relying on assistive technologies, as they receive no confirmation that their form is submitted successfully. The lack of proper status message updates makes it difficult for non-visual users to understand the outcome of their action.

Applicable WCAG 2.1 Standard at Issue: 4.1.3 Status Messages (Level AA)

URL Where Issue Was Encountered:

https://www.assouline.com/pages/corporate-gifting

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQDZnRX1bHDVRJzcE0btbsLOAXkX0v0sM JN3-kxOWiTtczI

Violation 7: 4.1.3 Status Messages

In content implemented using markup languages, status messages can be programmatically determined through role or properties such that they can be presented to the user by assistive technologies without receiving focus.

On the Gift cards cart page, when a user removes an added receipient, the screen reader does not announce that the receipient details has been removed. Sighted users see the details disappear immediately, but users relying on assistive technology may not know whether their action succeeded. Announcing the removal (e.g., "receipient removed") ensures that all users understand the update and can complete their order.

Applicable WCAG 2.1 Standard at Issue: 4.1.3 Status Messages (Level AA)

URL Where Issue Was Encountered:

https://gifts.assouline.com/main/cart/cmkp5tzqo00f4n201xsqflew9

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQBvGgHlfz1BRZX_wB-D3nT8AfSLQM1ogklV0obqdwzH2bw

Violation 8: 4.1.3 Status Messages

In content implemented using markup languages, status messages can be programmatically determined through role or properties such that they can be presented to the user by assistive technologies without receiving focus.

On the Product page, when a product is added or removed from the wishlist, the screen reader does not announce any confirmation. Sighted users can see the update visually(Wishlist Icon gets selected and unselected for a product), but users relying on assistive technology are not informed if the action was successful. This creates uncertainty and may lead to repeated or missed actions, making the shopping experience confusing and unreliable.

Applicable WCAG 2.1 Standard at Issue: 4.1.3 Status Messages (Level AA)

URL Where Issue Was Encountered:

https://www.assouline.com/products/santo-domingo

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQAzE1RMcKEhQbP3XAcedO7TAUf_r2w_1yvo05lY6TwqIXQ

Violation 9: 4.1.3 Status Messages

In content implemented using markup languages, status messages can be programmatically determined through role or properties such that they can be presented to the user by assistive technologies without receiving focus.

On the Product page, when a product is added to the cart, the screen reader does not announce any confirmation. Sighted users can see the update visually(Cart dialog box appears), but users relying on assistive technology are not informed if the action was

successful. This creates uncertainty and may lead to repeated or missed actions, making the shopping experience confusing and unreliable.

Applicable WCAG 2.1 Standard at Issue: 4.1.3 Status Messages (Level AA)

URL Where Issue Was Encountered:

https://www.assouline.com/products/santo-domingo

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQBfsriuWwTRRaQJ8EFM_oCFAZaXQht0H qi-y2hP4k3jEzI

Violation 10: 4.1.3 Status Messages

In content implemented using markup languages, status messages can be programmatically determined through role or properties such that they can be presented to the user by assistive technologies without receiving focus.

On the Product page, when a user adds or removes gift wrap using the "Add Gift Wrap" button, the screen reader does not announce whether the gift wrap has been added or removed. Although sighted users receive visual feedback (the plus icon changes to a tick and vice versa), users relying on assistive technologies receive no confirmation, making it unclear whether the action was successful.

Applicable WCAG 2.1 Standard at Issue: 4.1.3 Status Messages (Level AA)

URL Where Issue Was Encountered:

https://www.assouline.com/products/miami-beach?_pos=1&_fid=41e6ac3f3&_ss=c

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQBj_Ig9jfUQRo2Yi5xCdcPfARQv_BDPFkN lRSEKPTc9-nQ

Violation 11: 4.1.3 Status Messages

In content implemented using markup languages, status messages can be programmatically determined through role or properties such that they can be presented to the user by assistive technologies without receiving focus.

On the Product page, when a user activates the 'Email me when available' button after entering a valid email for an unavailable product, a success message "You will be notified once this item is back in stock." and a success button appear visually. However, the screen reader does not announce this confirmation. As a result, users relying on assistive technologies receive no feedback that their request was submitted successfully, making the outcome of the action unclear.

Applicable WCAG 2.1 Standard at Issue: 4.1.3 Status Messages (Level AA)

URL Where Issue Was Encountered:

https://www.assouline.com/products/ultimate-tower-black

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQD6p6B36tHiRo3RCtIVXpV7ASUOFz3qW XPfUMQM6S3YJ9I

Violation 12: 4.1.3 Status Messages

In content implemented using markup languages, status messages can be programmatically determined through role or properties such that they can be presented to the user by assistive technologies without receiving focus.

On the Products page, when filters are applied or cleared, the screen reader does not announce the change in filter state and only reads "Button Filter and sort" This does not convey whether filters have been applied or reset. As a result, users relying on assistive technologies are unaware of the current filter status, leading to confusion and impacting their ability to browse and refine products effectively.

Applicable WCAG 2.1 Standard at Issue: 4.1.3 Status Messages (Level AA)

URL Where Issue Was Encountered:

https://www.assouline.com/collections/best-sellers?sort_by=best-selling&filter.p.m.custom.filter_themes=Animals+%26+Nature&filter.p.m.custom.filter_themes=Travel

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/IQAb1vtOF0B_T4NKNoSnW7NpAT2b0JFjH slfcvScxLLzngo

37)     Although the Website appeared to have an "accessibility" statement displayed and an "accessibility" widget/plugin added, the "accessibility" statement and widget/plugin, when tested, still could not be effectively accessed by, and continued to be a barrier to, blind and visually disabled persons, including Plaintiff as a completely blind person. Plaintiff, although she attempted to access the statement, thus, was unable to receive any meaningful or prompt assistance through the "accessibility" statement and the widget/plugin to enable her to quickly, fully, and effectively navigate the Website.

38)     The fact that Plaintiff could not communicate with or within the Website left her feeling excluded, as she is unable to participate in the same shopping experience, with the same access to the merchandise, sales, discounts, and promotions, as provided at the Website and in the physical locations as the non-visually disabled public.

39)     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize one or more of Defendant's physical stores and to use the Website, but she is presently unable to do so as she is unable to effectively communicate with Defendant, due to her severe visual disability and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to her severe visual disability and the Website's access barriers. Thus, Plaintiff, as well as others who are blind and with visual disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

40)     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

41)     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

42)     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

43)     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

44)     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

45)     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

46)     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

47)     Defendant has not created and instituted an effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

48)     Defendant has not created and instituted on the Website a useful or accessible page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

49)     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

50)     Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's products offered on the Website and in the physical stores from their homes.

51)     Defendant thus has not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and their physical stores in contravention of the ADA.

52)     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

53)     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website at issue in the instant action.

54)     Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

55)     Defendant is, and at all relevant times has been, aware of the need to provide full access to all visitors to the Website.

56)     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

57)     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

58)     Notice to Defendant is not required because of Defendant's failure to cure the violations.

59)     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

60)     Plaintiff has retained the undersigned attorneys to represent her in this case and has agreed to pay them a reasonable fee for their services.


**COUNT I – VIOLATION OF THE ADA**

61)     Plaintiff realleges paragraphs 1 through 53 as if set forth fully herein.

62)    Pursuant to 42 U.S.C. §12181(7)(B), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

63)    Pursuant to 42 U.S.C. §12181(7)(B), the Website is covered under the ADA because it provides the general public with the ability to view the products available at Defendant's locations, purchase products through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical locations. Further, the Website also serves to augment Defendant's physical stores by providing the public information about the stores and by educating the public as to Defendant's brand and available products merchandise sold through the Website and in the physical stores.

64)    Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

65)    Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

66)    In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to

ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

67)    The Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

68)    Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has made available to the public on the Website and in their physical stores in violation of 42 U.S.C. §12101, et seq, and as prohibited by 42 U.S.C. §12182, et seq.

69)    The Website was subsequently visited by Plaintiff's expert and his determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendant thus has made insufficient material changes or improvements to the Website to enable its full use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff. Also, when the Website was visited by the expert, although the Website appeared to have an "accessibility" statement and widget/plugin linked on and displayed from its home page, the "accessibility" statement and widget/plugin, when tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website an effective and useful "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable

alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302. The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Mario Saavedra, attached hereto and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

70)    More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

71)    There are readily available, well-established guidelines on the internet for making Websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

72)    Defendant has violated the ADA -- and continue to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

73)    The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

74)     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed, 28 C.F.R.§36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

75)     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

76)     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

77)     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

78)     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with Defendant's Website and its physical stores.

79)     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

80)     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

i.      Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations through the Website and the physical locations.

ii.     Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website's being made readily accessible, provide an effective alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

iii.    Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's stores and becoming informed of and purchasing Defendant's products, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

iv.     Plaintiff is entitled to recover her reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned

counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

81)     WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

a.      A declaration that Defendant's website is in violation of the ADA;

b.      An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

c.      An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1]would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

d.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

---



[1]

e.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

f.      An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

g.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

h.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

i.      An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

j.      An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and

shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

k.       An award to Plaintiff of her reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.

## COUNT II – TRESPASS

Plaintiff realleges paragraphs 1 through 53 as if set forth herein.

82)     Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

83)     Plaintiff never consented to and was unaware that Defendant's website was placing software on her computer.

84)     The "pop-up" or banner notice that appears on Defendant's website does not properly audibilize the cookies policy in a way where a visually disabled person like the Plaintiff can properly understand or give informed consent to allow tracking cookies to be placed on her computer.

85)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on her personal computer, which was done without her knowledge and consent.

86)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of her computer.

87)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

Essential Cookies

We use these cookies for things like security, logins, site errors, and processing payments. We can't turn these necessary cookies off, but you can control them in your browser.

| Cookie Name | Provider | Duration |
|---|---|---|
| __cf_bm | | 30 Mins |
| _cmp_a | Shopify | 1 Day |
| _privy_0BAC41F642F93069BB29DFA0 | Shopify | 30 Days |
| _tracking_consent | Shopify | 1 Year |
| cart | Shopify | 1 Month 1 Day |
| cart_currency | Shopify | 1 Month 1 Day |
| cart_sig | Shopify | 1 Month 1 Day |

| Cookie Name | Provider | Duration |
| --- | --- | --- |
| keep_alive | Shopify | Session |
| localization | Shopify | 1 Year |
| polaris_consent_settings | TrueVault | 5 Months 27 Days |
| secure_customer_sig | Shopify | 1 Year |
| shopify_pay_redirect | Shopify | 1 Hour |
| swym-cu_ct | Swym | 30 Days |
| swym-email | Swym | 1 Year |
| swym-instrumentMap | Swym | 30 Days |
| swym-o_s | Swym | 30 Mins |
| swym-pid | Swym | 1 Year |
| swym-session-id | Swym | 31 Mins |
| swym-swymRegid | Swym | 1 Year |
| us_privacy | TrueVault | 5 Months 27 Days |

Analytics Cookies

These cookies tell us how you use our sites and apps, and provide information to help us improve your experience.

| Cookie Name | Provider | Duration |
| --- | --- | --- |
| 2c.cId | Nosto | 1 Year 1 Month 5 Days |
| _ga | Google Analytics | 1 Year 1 Month 5 Days |
| _ga_Y5LNKQB803 | Google Analytics | 1 Year 1 Month 5 Days |
| _gat | Google Analytics | 2 Mins |
| _gid | Google Analytics | 1 Day |
| _landing_page | Shopify | 14 Days |
| _orig_referrer | Shopify | 14 Days |
| _s | Shopify | 31 Mins |
| _shopify_s | Shopify | 30 Mins |
| _shopify_sa_p | Shopify | 30 Mins |
| _shopify_sa_t | Shopify | 30 Mins |
| _shopify_y | Shopify | 1 Year 1 Day |
|  |  |  |

| Cookie Name | Provider | Duration |
|---|---|---|
| _y | Shopify | 30 Days |

Personalization Cookies

We use these cookies to enhance functionality and personalize content for you. For example, they allow us to remember you when you return to our website or app. If you do not allow these cookies then some or all of these services may not function properly.

| Cookie Name | Provider | Duration |
|---|---|---|
| NOSTO_SESSION | Nosto | 1 Day |
| nostojs | Nosto | 3 Years 30 Days |

Advertising Cookies

These cookies help us decide which products, services and offers may be relevant for you. We use this data to customize the marketing content you see on websites, apps and social media, and to measure your interactions with that content. We might use these cookies to advertise our products to you when you visit other websites.

88) Due to Plaintiff's disability, she could not understand Defendant's website and she could not give informed consent to Defendant's installation of data and information tracking software on her computer. Defendant also could not give informed consent to Defendant's collection of her browsing history and the placement of analytics on her computer.

89) Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from her computer and determine which programs should be installed and operated on her computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email: radamslaw7@gmail.com
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434